# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CRIMINAL NO. 03-00168-CB |
| | | CIVIL ACTION NO. 09-00017-CB |
| PATRICK THOMPSON, | ) | |
| Defendant/Petitioner. | ) | |

## **OPINION and ORDER**

This matter is before the Court on motions filed by Defendant/Petitioner Patrick Thompson, a person in federal custody, including a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 225) and a motion for leave to amend or correct the § 2255 motion (Doc. 239).[1] The government has filed a response in opposition to the § 2255 motion (Doc. 237). For reasons discussed below, these motions are due to be denied.

## **Procedural Background**

Petitioner Patrick Thompson was arrested on a criminal complaint, indicted and subsequently tried on a six-count superseding indictment charging various cocaine and crack cocaine offenses (Counts 1 through 4), obstruction of justice (Count 5) and forfeiture (Count 6). His first trial ended in a mistrial when the jury was unable to reach a verdict. Prior to his second trial, a second superseding indictment was returned (Doc. 93) adding a second obstruction of justice charge.[2] In the interim between trials, Petitioner's attorneys, Bernard Grossberg and

---

[1] Several other pending motions, including a motion for discovery (Doc. 227), a motion for return of property (Doc. 228), a motion for leave to proceed in forma pauperis (Doc. 229), a motion for appointment of counsel (Doc. 230), will be addressed by separate order.

[2] The new charge became Count 6, and the forfeiture count became Count 7. All other counts remained the same. Also a codefendant, Calvin Smith, was added to Count 5 and Victoria Lott was named as an unindicted aider and abettor in Count 6.

Richard Yelverton, withdrew (Doc. 101) and were replaced by Robert F. Clark (Doc. 103).[3]
Petitioner was tried a second time, and on May 25, 2004 was convicted on all counts. After his conviction, Petitioner and the government entered into a consent agreement regarding the forfeiture count (Doc. 143). Petitioner was sentenced to total term of imprisonment of 480 months—consisting of 480 months each on Counts 1 though 4 and 240 months each on Counts 5 and 6, all counts to run concurrently. Pursuant to the consent agreement, Petitioner forfeited his interest in $150,000 in United States currency.

Two matters arose during the pretrial and trial phases which are relevant to the instant motions. Prior to the first trial, the government filed a notice of enhancement information pursuant to 21 U.S.C. § 851(a) (Doc. 32) establishing that Petitioner had previously been convicted of felony drug offense. Petitioner's counsel filed a motion to strike that information, but the issue was never resolved. Prior to the second trial, the government filed a "Second Enhancement Information" (Doc. 115) pursuant to 21 U.S.C. § 851(a), establishing that Petitioner had an additional prior felony conviction for a drug offense. Also prior to the first trial, Petitioner's counsel filed a motion to suppress evidence seized pursuant to a search warrant for Room 241 of the Intown Suites motel. Judge Granade denied the motion as untimely. The motion was raised again before the undersigned judge at trial and denied. The motion was raised again prior to the second trial and was, again, denied (Doc. 116) by Judge Granade for failure to allege standing and based on the law-of-the–case doctrine.

Petitioner filed a notice of appeal. His retained attorney was allowed to withdraw and was replaced by Peter Madden, Assistant Federal Public Defender. Mr. Madden examined the record and determined that there were no appealable issues. Mr. Madden was discharged by the

---

[3] All three attorneys were retained.

appellate court, and attorney Lila Cleveland was appointed. Ms. Cleveland was subsequently discharged and replaced by attorney Raymond Pierson. Mr. Pierson raised several issues on appeal—whether the district court erred in failing to hold a hearing on the motion to suppress, whether the indictment was multiplicitous, and whether there was constitutional *Booker* error at sentencing. The appellate court affirmed on all issues except one. It found that there was constitutional *Booker* error with respect to the firearms enhancement applied at sentencing, reversed Petitioner's sentence and remanded for resentencing.[4] Applying the advisory Guidelines, the Court imposed the same sentence at resentencing. Petitioner appealed, arguing that the sentence was unreasonable and unconstitutional. The appellate court rejected these arguments and affirmed Petitioner's sentence. Petitioner filed a petition for writ of certiorari in the United States Supreme Court. That petition was denied on January 7, 2008. *Thompson v. United States*, 552 U.S. 1121 (2008) (mem.)

Petitioner's § 2255 motion is dated January 5, 2009 and was received by the Clerk of Court on January 9, 2009. Petitioner's motion for leave to amend his § 2255 motion deposited in the mail at FCI Otisville, New York on March 4, 2010.

**Factual Background**

The Eleventh Circuit summarized the facts underlying Petitioner's conviction as follows:

In June 2003, a confidential informant ("CI") told Corporal Roy Cuthkelvin with the Mobile County, Alabama Sheriff's Department about a man known as "P" who used a 2000 Mercedes and a 2003 Cadillac with Massachusetts registrations to transport kilograms of cocaine from Atlanta to Mobile. On July 14, 2003, Cuthkelvin and another officer observed a brand new Cadillac and a newer-model Mercedes, both with Massachusetts license plates and identical fancy wheels, in the parking lot of an Intown Suites motel. The offices noted the tag numbers an learned that the cars were registered to [ ] Appellant Patrick

---

[4] The court found no constitutional *Booker* error with respect to the drug quantity enhancement since Petitioner had failed to object to the PSR's drug quantity findings.

Thompson. Through the motel the officers also determined that there was no guest registered as Patrick Thompson, but that one car was listed as belonging to Morris Parsons in room 241.

Later that evening, officers stopped the Mercedes, driven by Thompson, after it entered the motel parking lot. Thompson denied staying at the motel and indicated that a friend had a room on the third floor. Thompson consented to a pat-down search, during which officers found four or five hundred dollars and a key to room 241. Thompson also consented to a search of the Mercedes and the Cadillac. In the trunk of one car, officers found a plastic bag containing thirteen thousand dollars in cash, a large quantity of jewelry, a plane ticket in the name of Patrick Thompson and some documents bearing the name Morris Parsons.

Cuthkelvin obtained a search warrant for room 241. During the search, officers discovered, among other things 1.5 kilograms of cocaine, 217 grams of crack cocaine, digital scales and a receipt in Thompson's name for a storage unit in Massachusetts. Thompson was arrested.

In a taped phone conversation from jail shortly after his arrest Thompson asked a woman named Tanya Janice Lee to empty the Massachusetts storage unit. Lee did as Thompson asked and removed a suitcase containing money, a rusty gun and some crack cocaine. Lee disposed of the gun, gave the crack to Thompson's brother, gave most of the money to Thompson's father and eventually turned the suitcase with the remaining cash over to the FBI.

*United States v. Thompson,* No. 04-14722 (March 27, 2006) (Doc. 188).

**Issues Raised**

Petitioner has asserted numerous grounds for relief in his § 2255 motion. Those are as follows:

1. Insufficiency of the evidence as to Count 6;

2. The Presentence Investigation Report (PSR) incorrectly calculated his criminal history score;

3. Sentencing errors with regard to Counts 5 and 6;

4. The government's failure to file a notice of enhancement pursuant to 21 U.S.C. § 851(a) prior to the second trial;

5. A *Booker* violation due to sentencing enhancements based on drug quantity;

6. Trial counsel's alleged conflict of interest.

7. Ineffective assistance of counsel:

a. Counsel failed to raise certain issues in support of the motion to suppress;

b. Counsel failed to obtain Jencks Act materials from the government prior to trial;

c. Counsel's trial strategy was flawed;

d. Counsel failed to object to improper remarks in the government's closing argument;

e. Counsel failed to object to the government's Jencks Act violations at trial;

f. Counsel failed to object to the PSR's criminal history category (see claim 2, above);

g. Counsel failed to object to the PSR's obstruction of justice offense level (see claim 3, above);

h. Counsel failed to object to the government's failure to file the required § 851(a) notice of enhancement (see claim 4, above);

i. Counsel failed to object that sentencing based on drug quantity violated *Booker*;

j. Counsel failed to rebut the firearm sentencing enhancement;

k. Counsel was ineffective for failing to raise each of the above issues on appeal.

In addition to these claims, Petitioner seeks leave to amend his motion to assert a claim based on an alleged *Brady* violation. Below, the Court addresses the motion for leave to amend before turning to the issues raised in Petitioner's § 2255 motion.

**<u>Motion for Leave to Amend</u>**

Although it appears that Petitioner may be entitled to amend as a matter of right, the claim itself is barred by the one-year limitations period. Amendment of § 2255 pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. *Farris v. United States*, 333 F.3d 1211, 1214 (11th Cir. 2003). The rule provides that a party may amend without leave of court if the amendment is filed within 21 days after service of a responsive pleading. Fed. R. Civ. P.

15(a) (1). Petitioner's motion for leave to amend was filed within 21 days of the government's response in opposition to the § 2255 motion.[5] But the ability to amend does not make the claim asserted in the amendment timely. Section 2255 motions are subject to a one-year limitations period, which in this case began to run on January 7, 2008, the date the Supreme Court denied the petition for writ of certiorari. *Drury v. United States*, 507 F.3d 1295, 1296 (11th Cir. 2007) (conviction final on date Supreme Court denies petition for certiorari). Therefore, all § 2255 claims should have been asserted within one year of that date. Since the proposed amendment was not filed until March 4, 2009, it is untimely.

In some cases amendments may be considered timely if they relate back to the date the original pleading was filed. This one does not. An amendment relates back when, *inter alia*, "the amendment asserts a claim or defense that that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The proposed amendment asserts a *Brady* violation based on the government's alleged failure to inform the defense that one of its witnesses, Mobile County Deputy Sheriff Roy Cuthkelvin, was suspended for conduct unbecoming a public employee. Nothing about this incident, or the government's alleged failure to disclose it, appears in the original § 2255 motion. Consequently, it does not relate back.

Even if it were timely, Petitioner's claim has no merit. Petitioner cites a newspaper article[6] regarding Cuthkelvin's suspension. According to the article, the suspension arose from an incident that took place on October 10, 2004, more than four months *after* Petitioner's second

---

[5] The Court will assume, *arguendo*, that the government's response should be considered a responsive pleading.

[6] The news article is attached to Petitioner's motion for appointment of counsel (Doc. 230).

trial. There was no *Brady* violation[7] because the government could not have disclosed an incident that had not yet occurred.

**Section 2255 Analytical Framework**

Habeas relief, including relief under 28 U.S.C. § 2255, is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Id*. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *Addonizio v. United States*, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. The Eleventh Circuit has explained:

> Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal. Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.' " Accordingly, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice.

---

[7] A prosecutor's failure to disclose material exculpatory information violates a defendant's right to due process. *Brady v. Maryland*, 373 U.S. 83 (1963)

7

*Lynn v. United States*, 365 F. 3d 1225, 1232-33 (11th Cir. 2004) (internal quotation, citations and footnote omitted). Constitutional claims not raised on direct appeal may be considered if the petitioner can overcome his procedural default by "show[ing] cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990).[8]

When considering a § 2255 petition, the Court must hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. A petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708, 715 n. 6 (11th Cir. 2002). When claims are clearly contradicted by the record or are patently frivolous, no hearing is required. *Id.*

**Discussion**

*Claims 1-6*

These claims are easily dismissed. Claims 1 through 4 are non-constitutional claims that could have been raised on direct appeal but were not. For that reason, they cannot be raised in a § 2255 motion. *See Lynn*, 365 F.3d at 1232-33. Claim 5 was raised and decided on direct appeal. Doc. 188 at 6, 11-14. Claim 6 regarding trial counsel's alleged conflict of interest could be considered a constitutional claim arising under the Sixth Amendment. However, no cause or prejudice has been asserted for Petitioner's failure to raise the claim on direct appeal.[9]

---

[8] A second exception to the procedural default rule exists where "a constitutional violation has probably resulted in the conviction of one who is actually innocent " *Lynn*, 365 F.3d at 1234-35 (internal citation and quotations omitted).

[9] Furthermore, Petitioner's conflict of interest claim is meritless. A defendant who raises a post-trial conflict of interest claim must demonstrate that his attorney had an actual conflict of interest. *United States v. Novaton*, 271 F.3d 968, 1010-11 (11th Cir. 2001). An actual conflict (Continued)

*Claim 7: Ineffective Assistance of Counsel*

One way a petitioner may overcome a procedural bar is by demonstrating that the default was due to constitutionally ineffective performance by counsel. *Cross*, 893 F.2d at 1290. To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." *Id.* However, "[c]onclusory allegations of ineffective assistance are insufficient" *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* 466 U.S. at 686. When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers'

---

means that the attorney has inconsistent interests. Petitioner asserts that his trial attorney, Robert Clark, had inconsistent interests because Clark's fee was paid by Calvin Smith, a codefendant and government witness who also happened to be Petitioner's father. Petitioner relies on *Wood v. Georgia*, 450 U.S. 261 (1981), a case involving the payment of attorney's fees by an employer. Because of the possibility that the employer also expected its own interests to be protected, the Supreme Court remanded that matter for an evidentiary hearing. In this case, there is nothing to suggest that Smith paid Clark's attorney's fees out of his own pocket. The evidence at trial was that Smith took possession of approximately $150,000 that belonged to Petitioner and turned over only $25,000 to the FBI.

9

performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted).

### a. *Motion to Suppress*

Counsel did challenge the admissibility of evidence seized pursuant to a search warrant, though he did not raise the issue Petitioner puts forth in his § 2255 motion. Petitioner asserts that the state court judge's handwriting (i.e. the signature and date) on the search warrant is "remarkably similar" to the handwritten list of property seized set out found in the Return section of the search warrant.[10] Consequently, Petitioner contends, counsel should have argued that the search warrant was fraudulent. To succeed on an ineffective assistance of counsel claim, Petitioner must do more than point out arguments that could have been raised. In this instance, Petitioner must demonstrate that no reasonable attorney would have failed to challenge the authenticity of the search warrant. This is a burden Petitioner cannot meet because was no plausible basis to assert that the search warrant was fraudulent. No reasonable person would have suspected, much less concluded, that the search warrant was forged based on nothing more than an illegible signature and a date. Counsel's failure to raise this issue was not unreasonable.

### b. *Jencks Act/Discovery Violations*

Petitioner argues that Mr. Clark rendered constitutionally ineffective assistance "during the pretrial stages when he allowed the [government] to breach and or violate its agreement [to provide Jencks Act materials prior to trial]." Petr's Brf., Doc. 226, 32. Specifically, Petitioner argues that the government should have turned over transcripts of witnesses' testimony in the

---

[10] *See* Petr's Ex. 24, Doc. 226-5.

first trial. Jencks Act material is "any statement . . . of the witness in the possession of the United States" 18 U.S.C. § 3500. Petitioner's argument is deficient for two reasons. First, a defense attorney cannot and does not control the government's actions; therefore, a prosecutor's alleged misdeed cannot be asserted as an ineffective assistance of counsel claim. Second, as the government points out, the transcript from the first trial was not in the government's possession at the time of the second trial because it did not yet exist. According to the docket sheet, that transcript was not created until defendant's appeal was filed.

### c. Trial Strategy

This claim is difficult to decipher. First, Petitioner states that counsel's "trial strategy depended on the government not having proven the drug quantity as alleged in the Second Superseding Indictment." Petr's Brf., Doc. 226, 44. Petitioner's trial took place between the Supreme Court's decisions in *Apprendi* and *Booker*, a time when the constitutional issues regarding drug quantity and sentencings remained unresolved. Counsel's decision to make proof of drug quantity an issue at trial was clearly *not* unreasonable. Petitioner also points out that trial counsel moved for a directed verdict, rather than a judgment of acquittal, at the close of the government's case-in-chief. Even if it were true, as Petitioner asserts, that no competent counsel would have called a Rule 29(a) motion by the wrong name, the record demonstrates that the Court did consider the motion. Thus, there was no prejudice to the Petitioner. Petitioner also argues that counsel should have raised more than a "boiler-plate" sufficiency of the evidence argument in his Rule 29(a) motion. Since Petitioner fails to point out any specific shortcomings in the government's proof, this is nothing more than a conclusory claim.

### d. Closing Arguments

Petitioner claims that counsel rendered constitutionally ineffective assistance because he failed to object to the prosecutor's statement in closing that "evil triumphs when good men and women do nothing." Petitioner has failed to assert any prejudice arising from counsel's failure to object to this remark, nor can any be demonstrated. Any claim of prejudice based on this single statement would be frivolous in light of the overwhelming evidence of Petitioner's guilt. *Cf. Sims v. Singletary*, 155 F.3d 1297, 1309 (11th Cir. 1998) (no prejudice from prosecutor's comments where evidence was more than sufficient to convict).

### e. Jencks Act/Trial

This claim is virtually identical to petitioner's Jencks Act/discovery violation claim discussed above. *See* Claim 7b, *supra* at 10-11. This claims is denied for the same reasons.

### f. Criminal History Category

Petitioner argues that his criminal history category was unfairly increased from IV to V because counsel failed to object to the ¶ 54 of the PSR, which counted a prior conviction that was more than ten years old. In fact, counsel did file such an objection, but the objection was overruled. Position of Parties, Doc. 141, ¶ 6; Stmt. of Reasons, Doc. 152, at 35. Thus, Petitioner's claim is contradicted by the record.

### g. Guideline Sentencing Errors

Petitioner claims that the PSR failed to calculate his base offense level with regard to Counts 5 and 6 and that counsel's failure to object amounted to constitutionally ineffective assistance. Petitioner's initial premise is simply wrong. The PSR grouped the obstruction of justice offenses with the underlying drug offenses to obtain the offense level computation, as required by U.S.S.G. § 3C1.1, Application Note 8. PSR, Doc. 152, ¶ 38.

### h. Notice of Sentence Enhancement

12

Petitioner was subjected to an enhanced sentence under 21 U.S.C. § 851(a) due to the existence of one or more prior felony drug convictions. He asserts that counsel rendered ineffective assistance because he failed to object to the enhancement based on lack of notice. Petitioner is simply mistaken in his assertion that the government did not file a notice of sentence enhancement prior to his second trial. It did file such a notice. *See* discussion, *supra* at 2.

### *i. Apprendi/Booker Objection*

Petitioner claims that he was sentence in excess of the statutory maximum because drug quantity was not decided by a jury beyond a reasonable doubt. Moreover, he argues that counsel was constitutionally ineffective for failing to raise this issue. Counsel's performance was not unreasonable, however, because there was no likelihood of success. Any potential *Apprendi* or *Booker* error was harmless. In reaching the guilty verdict the jury necessarily had to have concluded that the drugs found in the Intown Suites motel room were Petitioner's. *See United States v. Anderson*, 289 F.3d 1321, 1326 (11th Cir. 2002) (discussing *Apprendi* and harmless error). That evidence formed the basis of the PSR's drug quantity determination. PSR, Doc. 152, ¶¶ 8 & 39.

### *j. Firearms Enhancement*

Petitioner claims counsel was ineffective at sentencing for failure to argue at sentencing that the firearms was unconnected to the drug offense. This claim is patently frivolous. Counsel raised this claim, unsuccessfully, at resentencing. Tr., Doc. 217, 5-10.

### *k. Appeals*

With respect to the performance of his appellate counsel, Petitioner makes a broad assertion incorporating "all the above arguments which could have been raised on appeal but

were not." This is nothing more than a conclusory claim and, for that reason, is summarily denied.

**Conclusion**

For the reasons set forth above, both the motion to amend and the motion to vacate set aside or correct sentence are **DENIED**.

**DONE** and **ORDERED** this the 11th day of January, 2011.

*s/Charles R. Butler, Jr.*
**Senior United States District Judge**