IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal Action No. 03-00168-KD-B |
| ) | |
| PATRICK THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This action is before the Court on the motion for reduction in sentence pursuant to 18 U.S.C. § 3582(a)(1)(A)(i) filed by Defendant Patrick Thompson and letters in support (docs. 309, 312, 313, 314, 315, 316, 317). Upon consideration, and for the reasons set forth herein, the motion is DENIED.[1]

I. Background

Thompson was originally indicted on July 31, 2003 (doc. 13). The Indictment was superseded in October 2003 and Thompson was tried in February of 2004. The Court declared a mistrial (doc. 86, Order on jury trial). Before the second trial, Thompson was indicted in a

---

[1] Thompson's request for appointment of counsel is denied (doc. 309-1). Thompson does not have a constitutional or statutory right to counsel in a § 3582(c)(1)(A) proceeding "[a]s a result, 'the decision to appoint an attorney is left to the discretion of the district court.'" United States v. Rolon, 2022 WL 16959204 (11th Cir. Nov. 16, 2022) (unreported opinion) (quoting United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009)) (addressing the right to counsel in the context of a 18 U.S.C. § 3582(c)(2) motion and finding that the district court may appoint counsel to a financially eligible person if it finds that the interests of justice so require); United States v. Cain, 827 Fed. Appx. 915 (11th Cir. 2020) (discussing Webb and finding the district court's denial of counsel in a § 3582(c)(1)(A) proceeding was not an abuse its discretion). To determine whether the interests of justice require appointment of counsel, the Court may consider factors such as whether the grounds for the motion are so factually and legally complex or exceptional as to warrant appointment of counsel, whether the defendant is capable of presenting the facts or argument, and the merits of defendant's argument, as well as other equitable concerns that may in the interests of justice require appointment of counsel. United States v. Cain, 827 Fed. Appx. at 921 (citing Webb, 565 F. 3d at 195 n.4). The Court has considered these factors and finds that they do not weigh in favor of appointment of counsel.

Second Superseding Indictment (doc. 93). In Count One, Thompson was charged with conspiracy to possess with intent to distribute more than 200 grams of crack cocaine. In Count Two, he was charged with conspiracy to possess with intent to distribute more than one kilogram of cocaine. In Count Three, he was charged with possession with intent to distribute more than 200 grams of crack cocaine. In Count Four, he was charged with possession with intent to distribute more than one kilogram of cocaine. He was also charged with obstruction of justice in Counts Five and Six. Count Seven sought forfeiture.

Counts One and Three (crack cocaine) subjected him to the penalty provisions of 21 U.S.C. § 841(b)(1)(A) and Counts Two and Four (powder cocaine) subjected him to the penalty provisions of 21 U.S.C. § 841(b)(1)(B). The United States filed a notice of intent to seek enhanced sentence pursuant to 21 U.S.C. § 851(a) on basis that Thompson had a prior qualifying felony drug conviction (doc. 115). As to Count One and Count Three (crack cocaine), the enhanced statutory penalty was a statutory minimum sentence of 20 years to life, as opposed to 10 years to life. As to Counts Two and Four (powder cocaine), the enhanced statutory penalty was a statutory minimum sentence of 10 years to life, as opposed to 5 to 40 years. Counts Five and Six were subject to a statutory maximum of 240 months.

In May 2004, Thompson was tried and convicted as to all Counts (doc. 126). At trial, the jury found that he conspired to distribute and possessed with intent to distribute 50 grams or more of crack cocaine (Counts One and Three) (doc. 128, p. 9; doc. 175-1, p. 100-101, Trial Transcript). The jury also found Thompson conspired to distribute and possessed with intent to distribute 500 grams or more but less than 5 kilograms of powder cocaine (Counts Two and Four) (Id.). He was also convicted of obstruction of justice (Counts Five and Six) (Id.).

Thompson was sentenced August 25, 2004. He was held responsible for 217 grams of crack cocaine and 1.5 kilograms of cocaine (doc. 278, p.16, Presentence Investigation Report).

2

His total offense level was 40, and with a criminal history category of V, his sentencing guidelines range was 360 to life. (Id.)  He was sentenced to a total term of 480 months consisting of 480 months each as to Counts One, Two, Three and Four and 240 months each as to Counts Five and Six, to serve concurrent (doc. 145).

In May 2006, the Eleventh Circuit affirmed Thompson's convictions.  However, the Eleventh Circuit found a Sixth Amendment violation occurred as to the firearm enhancement. The Eleventh Circuit vacated Thompson's sentence and remanded for the limited purpose of permitting the "district court to determine what sentence is reasonable and appropriate after considering the now-advisory Sentencing Guidelines range and the factors set forth in 18 U.S.C. § 3553(a)" (doc. 188, p. 17, n. 5). On January 16, 2007, Thompson was re-sentenced to the same terms of imprisonment (doc. 211).  His sentence was affirmed on appeal (doc. 222).

In 2015, Thompson moved for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782[2] to the United States Sentencing Guidelines (doc. 262).  Based on the revised guidelines, his base offense level was recalculated as 30, which resulted in a total offense level of 36. With a criminal history category of V, his amended guidelines range for Counts 1 through 4 was 292 to 365 months (doc. 264 at 1).  His sentence of 480 months as to each of the four drug convictions was reduced to 328 months.  His sentence of 240 months for the obstruction of justice counts was unchanged.  Thus, Thompson's total term of imprisonment was reduced from 480 months to 328 months (concurrent) (docs. 267, 268).

---

[2] Amendment 782 reduced, generally by two levels, certain offense levels assigned in the Drug Quantity Tables at U.S.S.G. § 2D1.1, which resulted in lower guideline ranges for many drug trafficking offenses.  Amendment 782 was incorporated into the 2014 Sentencing Guidelines and given retroactive effect by the Sentencing Commission. *See* 79 Fed. Reg. 44973-01, 2014 WL 3749936 (F.R.) (Aug. 1, 2014).

In February 2019, Thompson filed a motion for appointment of counsel which the Court construed as a motion for relief pursuant to § 404(b) of the First Step Act of 2018. Pub. L. No. 115-391, 132 Stat. 5194, § 404(b) (doc. 277). The Court denied his motion (doc. 283). In May 2021, the Court of Appeals for the Eleventh Circuit vacated this Court's order and remanded for review based on its decision in United States v Jones, 962 F.3d 1290 (11th Cir. 2020), and for this Court to "consider Thompson's request for appointment of counsel in the first instance." (doc. 289 at 1-2). The Court appointed counsel (docs. 277, 290). The parties then submitted briefs and supplemental briefs (docs. 295, 296, 297, 301, 302, 303, 304).

In United States v Jones, the Eleventh Circuit explained that under the First Step Act, "[t]o be eligible for a reduction, the district court must have "imposed a sentence" on the movant for a "covered offense." Jones, 962 F.3d at 1298. The Eleventh Circuit also explained that after deciding a defendant is "eligible," the district court has discretion to determine if a reduction is warranted. Id. at 1304. On remand, the parties did not dispute, and the Court agreed, that Thompson's two convictions for crack cocaine offenses were "covered offenses" because the Fair Sentencing Act "increased the quantity of crack cocaine necessary to trigger the higher penalties in subsections (b)(1)(A)(iii) and (B)(iii)" Jones, 962 F.3d at 1297, and that he was eligible for consideration of a sentence reduction under the First Step Act (docs. 295, 297).

The Court determined that the Fair Sentencing Act, made retroactive by the First Step Act, modified the statutory penalties for offenses involving less than 280 grams of crack cocaine. With the enhancement for a prior conviction, the original statutory penalty for Thompson's crack cocaine offenses was 20 years to life. 21 U.S.C. § 841(b)(1)(A)(iii) (1994).[3] With application of

---

[3] At that time, a quantity exceeding 50 grams triggered a higher statutory penalty. After the First Step Act made the Fair Sentencing Act retroactive to certain covered offenses, a quantity exceeding 280 grams is necessary to trigger the higher statutory penalty.

4

the Fair Sentencing Act "as if" it had been applicable at sentencing, his statutory penalty for the two crack cocaine offenses was 10 years to life. 21 U.S.C. § 841(b)(1)(B)(iii) (2012); First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(b).  The Court reduced Thompson's sentence for his crack cocaine convictions to 240 months (doc. 305).

However, the Court found that his convictions for the two powder cocaine offenses were not "covered offenses" under the First Step Act. The Court explained that even though his sentence for the crack cocaine convictions was reduced, he still must serve the remainder of his 328-month sentence as to the powder cocaine convictions (Id.).

Thompson filed a notice of appeal (doc. 306). Later, he filed a motion to dismiss in the Court of Appeals and the motion was granted (doc. 318).

Thompson has now filed a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) alleging that extraordinary and compelling reasons exist for a reduction of his sentence (doc. 309).  He also filed letters in support, including an offer of employment as a personal fitness trainer (docs. 312-317).

At present, Thompson is incarcerated at FCI Fort Dix in New Jersey.  He is now 53 years old and has served approximately 21 years in prison. (doc. 309, p. 21).  His release date is December 6, 2025.

II.  Statement of the law

The Court does not possess inherent authority to modify a sentence. Instead, Congress has created limited statutory grounds for modification. See 18 U.S.C. § 3582(c); United States v. Gray, No. 22-11963, 2023 WL 1836789, at *2 (11th Cir. Feb. 9, 2023) ("A district court has no inherent authority to modify a defendant's sentence and may do so 'only when authorized by a statute or rule.'") (quoting United States v. Puentes, 803 F.3d 597, 605–06 (11th Cir. 2015)).

Here, Thompson moves pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which provides that upon motion of the defendant or the Director of the Bureau of Prisons, the Court may reduce a sentence if there are extraordinary and compelling reasons which warrant a reduction, certain procedural requirements are met[4], the relevant factors in 18 U.S.C. § 3553(a) weigh in favor of a reduction in sentence, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court of Appeals for the Eleventh Circuit has held that U.S.S.G. "§ 1B1.13 is an applicable policy statement that governs all motions under Section 3582(a)(1)(A)." United States v. Bryant, 996 F. 3d 1243, 1262 (11th Cir. 2021).[5]

The Policy Statement provides that upon motion under 18 U.S.C. § 3582(c)(1)(A)(i) the Court may reduce a term of imprisonment if it determines that the relevant factors in 18 U.S.C. § 3553(a) weigh in favor of a reduction, there are extraordinary and compelling reasons which warrant a reduction, the defendant is not a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g), and the "reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. However, the district courts need not analyze the above requirements in any specific order. See United States v. Tinker, 14 F. 4th 1234, 1237-1238 (11th

---

[4] Defendants may file a § 3582(c)(1)(A)(i) motion after they have "exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). Thompson alleges that he submitted a request for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to the Warden at FCI Fort Dix in April 2020 and received a denial in May 2020. He asserts that because thirty days lapsed before he filed this motion, he has "exhausted his administrative remedies" (doc. 309, p. 2-3). Thompson appears to have met the procedural requirement. See United States v. Harris, 989 F.3d 908, 910-11 (11th Cir. 2021) (finding that the procedural requirements of 18 U.S.C. § 3582(c)(1)(A) is not jurisdictional but instead is a claim-processing rule).

[5] Thompson cites four circuit court decisions for the premise that the Policy Statement applies only to motions filed by the Bureau of Prisons on behalf of an inmate (doc. 309, p. 7). However, in United States v. Bryant, the Eleventh Circuit specifically held that the Policy Statement applies to motions filed by defendants.

Cir. 2021) (per curiam). Importantly, should the movant fail to make a showing on any one requirement, that failure "would foreclose a sentence reduction." Id. at 1238.

The Policy Statement lists four examples of extraordinary and compelling reasons under § 3582(c)(1)(A)(i). Specifically, the "medical condition of the defendant" such as a terminal illness, or serious physical or medical condition, or serious functional or cognitive impairment, or age-related physical or mental health deterioration, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). Also, the "age of the defendant" where the "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id. at cmt. n.1(B). Additionally, certain "family circumstances" may provide grounds for a reduction of sentence. Specifically, "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children [or] (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Id. at cmt. n.1(C).

And last, any "other reason [a]s determined by the Director of the Bureau of Prisons, [when] there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. at cmt. n.1(D). Although the phrase "other than" has been broadly interpreted by some courts, the Eleventh Circuit explained that "Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." United States v. Bryant, 996 F.3d at 248. And that the "district courts may not 'find[ ] extraordinary and compelling reasons within the catch-all provision beyond those specified by the Sentencing Commission in

7

Section 1B1.13.'" United States v. Beckford, No. 22-10638, 2022 WL 4372553, at *2 (11th Cir. Sept. 22, 2022) (quoting United States v. Giron, 15 F.4th at 1343, 1347 (11th Cir. 2021)).

Because the Policy Statement allows other reasons as determined by the Director of the Bureau of Prisons, U.S.S.G. § 1B1.13 at cmt. n.1(D), the Court is constrained by the determinations of the Director. See Bureau of Prisons Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*. Review of Program Statement 5050.50 indicates that the Director has determined that certain medical conditions regardless of age, i.e., terminal medical conditions, or debilitating medical conditions which substantially diminish the inmate's ability to provide self-care in prison; certain medical or mental conditions affecting inmates 65 and older who have served at least 50% of their sentence; and certain family circumstances involving the death or incapacitation of the caregiver for the inmate's minor children, or disabled spouse or registered partner, may, if conditions are met, constitute grounds for a reduction of sentence.

III. Analysis

Thompson "seeks a reduction in sentence due to the subsequent lowering of his mandatory minimum Section 401 of the First Step Act of 2018" (doc. 309, p. 1). Thompson argues that "the disparity of his currently imposed sentence contrasted with a sentence under the new law, coupled with the shorter terms received by his co-defendants" when considered with "the ongoing pandemic and the high risk that [he] has to Covid-19 due to his obesity and the harsh prison conditions and prolonged lockdowns due to Covid-19" are extraordinary and compelling reasons for a sentence reduction. (Id.).

In 2007, based on the quantity of crack cocaine,[6] Thompson was subject to the penalty provisions in 21 U.S.C. § 841(b)(1)(A) (1994). At that time, the mandatory minimum sentence

---

[6] In 2007, when Thompson was sentenced, he was subject to the penalty provisions in 21 U.S.C.

8

was 20 years for a person with a prior conviction for a felony drug offense. In 2018, the First Step Act amended 21 U.S.C. § 841(b)(1)(A) and lowered this mandatory minimum sentence from 20 years to 15 years. First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(2), 132 Stat. 5194, 5220 (Dec. 21, 2018). The amendment was not made retroactive. See Section 401(a)(c).

However, and importantly, 21 U.S.C. § 841(b)(1)(A) no longer applies to Thompson.[7] In 2022, the Court found that the Fair Sentencing Act, made retroactive by the First Step Act, modified the statutory penalties for convictions such as Thompson's, which involved less than 280 grams of crack cocaine.[8] With application of the Fair Sentencing Act "as if" it had been applicable at sentencing, his statutory penalty was 10 years to life, pursuant to 21 U.S.C. § 841(b)(1)(B) (2012) (doc. 305). In other words, Thompson is now subject to the penalty provisions of 21 U.S.C. § 841(b)(1)(B) not 21 U.S.C. § 841(b)(1)(A).

Also, the Eleventh Circuit has held that "sentencing disparity between people with enhanced sentences before and after the passage of the First Step Act and the cumulative issues do not fit within the policy statement and, as a result, they cannot be considered to be extraordinary and compelling reasons." United States v. Abston, 2022 WL 1164741 (11th Cir. 2022) (unreported opinion) (per curiam); United States v. Sanchez, 860 Fed. Appx. 679, 681 (11th Cir. 2021) ("The purported sentencing disparity in Sanchez's case is neither an age, family,

---

§ 841(b)(1)(B) for his powder cocaine convictions. The First Step Act did not amend the mandatory minimum sentence in that statute. Thus, the mandatory minimum sentence for his powder cocaine convictions was and still is ten (10) years for a person with a prior conviction for a felony drug offense.

[7] Even if the statute did apply, the Court of Appeals for the Eleventh Circuit has held that the amendments to 21 U.S.C. § 841(b)(1)(A) do not apply retroactively to defendants who were sentenced before the effective date of the First Step Act, December 2018. United States v. Pubien, 805 Fed. Appx. 727 (11th Cir. 2020).

[8] In 2007, a quantity exceeding 50 grams triggered a higher statutory penalty. Now, a quantity exceeding 280 grams is necessary to trigger the higher statutory penalty.

or medical condition, nor has BOP determined that it is an 'other' reason warranting compassionate release.") The same is true with disparity between co-defendants. That too "does not fit within the policy statement." Id.; see United States v. Waldon, 2021 WL 2226632, at *3 (M.D. Fla. June 2, 2021), *adhered to on reconsideration*, 2021 WL 3883739 (M.D. Fla. Aug. 31, 2021), and *aff'd,* 2022 WL 1740425 (11th Cir. May 31, 2022) (finding that "the disparity between his sentence and that of his codefendants . . . alone or in combination" did not "fall[] within the policy statement's definition of 'extraordinary and compelling reasons.'") (citing U.S.S.G. § 1B1.13, cmt. n.1).

Since Congress specifically states that a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i) must be consistent with the applicable Policy Statements and the Eleventh Circuit has held that U.S.S.G. § 1B1.13 is an applicable Policy Statement, Bryant, 996 F. 3d at 1262, this Court is without authority to disregard the Policy Statement's plain language. Thus, a reduction of sentence based upon the arguments Thompson presents, if they were viable, would not be consistent with Policy Statement § 1B1.13. Therefore, to the extent his motion is based on these grounds, it is denied.

The Court next looks to whether Thompson's alleged "high risk" of contracting Covid 19 in the "harsh prison conditions and prolonged lockdowns due to Covid 19," and the increased risk of serious illness or death due to his obesity and pre-diabetes should he contract Covid 19, establishes an extraordinary and compelling reasons for a sentence reduction (doc. 309, p. 13-14, 17); U.S.S.G. § 1B1.13, cmt. n.1(D).

Thompson states that he is 5' 10" tall, weighs 270 pounds, and his body mass index is 39.2 (doc. 309, p. 17). He argues that according to the Centers for Disease Control and Prevention, he is obese and considered at "a much higher risk of serious illness or death" if he contracts Covid-19 because "people with a high BMI produce fewer antigens that would ward

off infections such as Covid-19." (Id., p. 17).  Thompson also states that he is "fully vaccinated, has had Covid-19 twice and does not want to contract it again due to the significant symptoms that he faced previously." (Id., p. 18).

At present, FCI Fort Dix is functioning at Level 2 precautions due to Covid 19.  The precaution level is determined by medical isolation rate, facility vaccination rate, and community transmission. https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp Level 1 is the lowest and Level 3 is the highest precaution level.  At present, four (4) inmates, out of approximately 3,900 inmates have tested positive for Covid 19.  No staff has tested positive.  https://www.bop.gov/coronavirus/; https://www.bop.gov/locations/institutions/ftd/ (last visited February 27, 2023).

According to the CDC, overweight is defined as a body mass index (BMI) of 25 to 30, obesity is defined as a BMI of 30 to 40, and severe obesity is defined as a BMI of 40 or greater. The CDC has warned that obesity makes a person "more likely to get very sick from COVID-19" and that the "risk of severe illness from COVID-19 increases sharply with higher BMI." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (Last updated February 10, 2023) (Last visited February 22, 2023). However, the CDC also explains that "BMI is a screening measure and is not intended to diagnose disease or illness." https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (Last visited February 22, 2023.

Setting aside that only four inmates out of approximately 3,900 inmates at FCI Fort Dix have tested positive for Covid 19, and that the facility is taking Level 2 precautions to protect the inmates from contracting the virus, Thompson has not provided any medical evidence to support

his statement that he has been diagnosed with obesity and pre-diabetes,[9] such that may increase his risk of serious illness or death should he contract Covid 19. Therefore, he has failed to sustain his burden of showing an extraordinary and compelling reason for a reduction of sentence. Since Thompson has failed to make a showing on this requirement, his failure forecloses a sentence reduction. United States v. Tinker, 14 F. 4th at 1238.

IV. Conclusion

Upon consideration, and for the reasons set forth herein, Thompson's motion is DENIED.

**DONE** and **ORDERED** this the 27th day of February 2023.

s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[9] Thompson provides a letter from a future employer who plans to hire him as a personal trainer at a fitness center if he is released. Specifically, his future employer states that Thompson's "responsibilities as a personal trainer would entail overseeing the general fitness and well-being of our members. This includes, but is not limited to, diet and nutrition of body building, aerobics, and cleaning of the facility. This job offer is based upon Thompson's qualification of the prerequisite skill set necessary to the job, as well as, my desire to participate in his re-entry into society, and to assist in helping him transition into the right direction." (Doc. 315). This offer, and Thompson's intent to accept the offer to work as a "fitness trainer" (doc. 309, p.17), raise a question as to whether Thompson is physical fit and muscular or perhaps a bodybuilder, who may have a high BMI "because of increased muscularity."
https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html#Athlete
(Last visited February 22, 2023) ("However, athletes may have a high BMI because of increased muscularity rather than increased body fatness. In general, a person who has a high BMI is likely to have body fatness and would be considered to be overweight or obese, but this may not apply to athletes. A trained healthcare provider should perform appropriate health assessments to evaluate an individual's health status and risks.").